**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| WILLIAMSON PELL DONALD | : | |
| | : | **CIVIL ACTION** |
| v. | : | **No. 25-1901** |
| | : | |
| BANK OF AMERICA, N.A. | : | |

McHUGH, J.                                                     August 5, 2025

## MEMORANDUM

This is a *pro se* civil action arising out of Defendant Bank of America's purported mismanagement of two New York trusts. Plaintiff Williamson Pell Donald contends that the bank breached its fiduciary duty by (1) failing to facilitate his timely judicial appointment as successor trustee of one of the trusts, and (2) incurring excessive legal fees in administering the trusts. Defendant has moved to dismiss, asserting that the probate exception to diversity precludes this Court from exercising jurisdiction. Because I agree that the relief Plaintiff seeks would involve control over property actively under the control of the state probate court, I will grant Defendant's motion on jurisdictional grounds.

### I.     Facts as Pled

For sixty years, Bank of America has served as corporate trustee of two New York trusts: a 1962 testamentary trust created under the Will of Vida K. Pell (Plaintiff's grandmother) and a 1964 inter-vivos trust, also created by Vida Pell.[1] *See* Compl., ECF 1; Ex. A (testamentary trust); Ex. B (inter-vivos trust). Plaintiff is a one-sixth discretionary income beneficiary of the trusts,

---

[1] In February 2025, Bank of America resigned as corporate trustee of both trusts. *See* ECF 10-11; ECF 10-13.

both of which have been under the supervision of the Surrogate's Court of Westchester County (the "Surrogate's Court") for nearly six decades.[2]  *See* Compl. ¶ 60; Def. Decl., ECF 10-3.

Following the death of Vida Pell in 1967, her Will was admitted to probate, with Williamson Pell Jr. (Plaintiff's uncle), Norman H. Donald, III (Plaintiff's brother), and Bank of America (then the United States Trust Company) serving as co-trustees of the testamentary trust. *Id.* ¶¶ 3-5.  After Williamson Pell Jr. died in 1972, successor letters of trusteeship were issued to Plaintiff's cousin, Angie Pell.  *Id.* ¶¶ 5-7.  Norman Donald III served as co-trustee with Angie Pell until Donald III's death in July 2018.[3]  *Id.* ¶¶ 9-10.

On February 19, 2025, the Surrogate's Court appointed Plaintiff as successor trustee of the testamentary trust, approved Bank of America's resignation as corporate trustee of both trusts, and appointed First State Trust Company as successor corporate trustee of both trusts.  ECF 10-11; ECF 10-13.  On June 5, 2025, Bank of America petitioned the Surrogate's Court for the judicial settlement of the bank's intermediate accounts.  ECF 10-14; ECF 10-15.  These accounting proceedings remain pending.  ECF 13-1; ECF 13-2.[4]

---

[2] The Surrogate's Court handles probate and estate proceedings in the New York State Unified Court System.

[3] After Williamson Pell Jr. died in 1972, Plaintiff was appointed as successor trustee of the inter-vivos trust. *See* Compl. ¶ 37; *id.* Ex. B at Article Sixth.  Angie Pell has thus served as trustee of the *testamentary* trust since 1972, while Plaintiff has served as trustee of the *inter-vivos* trust over the same period.  After Norman Donald III died in July 2018, Plaintiff asserts that Bank of America breached its duty to facilitate (1) his timely appointment as successor trustee of the testamentary trust, and (2) Angie Pell's timely appointment as successor trustee of the inter-vivos trust.  Compl. ¶¶ 9-31, 32-51.  To the extent Plaintiff attempts to bring claims on behalf of his cousin, he lacks standing to do so. *See Powers v. Ohio*, 499 U.S. 400, 410 (1991) ("In the ordinary course, a litigant must assert his or her own legal rights and interests, and cannot rest a claim to relief on the legal rights or interests of third parties.").

[4] Courts are "permitted to take judicial notice of docket entries filed in separate litigation proceedings." *FCS Capital LLC v. Thomas*, 579 F.Supp.3d 635, 647 (E.D. Pa. 2022).

Plaintiff contends that Bank of America, as corporate trustee, breached its duty to timely secure his judicial appointment as successor trustee of the testamentary trust following Norman Donald III's death in July 2018.[5]  He points to language in the trust providing: "Should Norman H. Donald, III, fail to qualify or cease to act as such Executor and Trustee, I nominate and appoint my grandson, Williamson P. Donald, as such Executor and Trustee."  *See* Compl. Ex. A at Article Tenth.  Plaintiff also asserts that Bank of America incurred excessive legal fees in connection with its administration of the trusts, thereby reducing his one-sixth discretionary income interest.  *Id.* ¶¶ 48-72.  Plaintiff seeks "not less than $100,000 trustees fees plus interest" based on his delayed appointment, a $300,000 reimbursement to the trusts based on the bank's excessive payments to legal counsel, and $10 million in punitive damages.

Defendant has moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, contending that there is no federal question jurisdiction and that the probate exception precludes the exercise of diversity jurisdiction because the relief sought would require this Court to assume *in rem* jurisdiction over assets actively under the control of the state probate court.  Because Defendant's arguments on jurisdiction are persuasive, I do not reach its alternative arguments for dismissal.[6]

## II.    Standard of Review

Defendant moves for dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim.  I construe the motion challenging subject matter

---

[5] Plaintiff asserts that although he was not formally appointed until 2025, he served as a de-facto trustee prior to his appointment.  Compl. ¶¶ 13, 16.

[6] Defendant also asserts that the Court should abstain under *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) in light of parallel proceedings pending in the Surrogate's Court. Defendant also maintains that dismissal is warranted under *forum non conveniens*.  Finally, Defendant moves to dismiss pursuant to Rule 12(b)(6) for failure to state a claim.

jurisdiction under Rule 12(b)(1) in part as a facial attack, to the extent that Plaintiff's complaint pleads the history of the trusts and their supervision by the New York Surrogate's Court, and in part as a factual attack, considering Defendant's representation that there are ongoing proceedings there. As to the latter, materials outside the pleadings are properly considered. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016).

### III.    Discussion

Plaintiff contends that Bank of America (1) failed to timely facilitate his judicial appointment as successor trustee of the testamentary trust, and (2) incurred excessive legal bills in connection with its administration of the trusts.[7]  For the reasons that follow, I conclude that this Court lacks jurisdiction over both claims.

#### A.  Plaintiff's claims fall outside the scope of federal question jurisdiction.

Federal question jurisdiction is "invoked by and large by plaintiffs pleading a cause of action created by federal law." *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 162 (3d Cir. 2014), *aff'd*, 578 U.S. 374 (2016).  As I read the Complaint, Plaintiff's claims sound entirely in state tort law – specifically, common law breach of fiduciary duty.[8]

It appears that Plaintiff is attempting to invoke federal question jurisdiction by alluding to Title 12 of the FDIC regulations, which "set[s] forth the standards that apply to the fiduciary

---

[7] Additionally, Plaintiff objects to a request by Bank of America's counsel that 28 beneficiaries execute an Account, Release, and Indemnification Agreement for the 2024-2025 period, characterizing counsel's statement – that Bank of America would initiate judicial accounting proceedings at the trusts' expense if releases were not obtained – as a "threat," *see* Compl. ¶¶ 85-96, and objects to Bank of America's investment advisory recommendation that "the trusts be invested 40% in bonds." *Id.* ¶¶ 97-103.  Finally, Plaintiff asserts vague allegations involving supposed promises of unspecified "bank compensation" and subsequent "reneging" on behalf of specific Bank of America employees.  *Id.* ¶¶ 104-108.

[8] There is a "special and small category" of cases in which an action based on state law may nonetheless give rise to federal question jurisdiction. *Gunn v. Minton*, 568 U.S. 251, 258 (2013).  "[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial,

activities of national banks."[9]  12. C.F.R. § 9.1(b).  The Third Circuit has held that 12 U.S.C. §

92a – the primary statute authorizing 12 C.F.R. § 9 – does not create a private right of action.[10]

*See In re Corestates Tr. Fee Litig.*, 39 F.3d 61, 69 (3d Cir. 1994) ("no private right of action should

be implied under [12 U.S.C] § 92a").  Accordingly, there is no basis for federal question

jurisdiction.  *See In re Fidelity Bank Tr. Fee Litig.*, 839 F.Supp. 318, 325 (E.D. Pa. 1993)

(dismissing alleged violations of 12 C.F.R § 9.15(a) and 12 C.F.R. § 9.18(b)(12) for lack of federal

question jurisdiction), *aff'd sub nom.*, *Lewis v. Fidelity Bank*, 43 F.3d 1461 (3d Cir. 1994).

Consequently, diversity would be the only basis for jurisdiction.

### B.  The probate exception precludes the exercise of federal diversity jurisdiction.

Plaintiff does not invoke diversity jurisdiction in his Complaint, but I take judicial notice

that the requirements of the federal diversity statute are nominally satisfied: Mr. Donald is

domiciled in Pennsylvania, Defendant Bank of America is a citizen of North Carolina, and the

amount in controversy exceeds $75,000.[11]  Nevertheless, the probate exception prohibits my

---

and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Id.* (citing *Grable & Sons Metal Prods., Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005)).  This action plainly does not "necessarily raise" a disputed federal issue, much less one that is important "to the federal system as a whole." *Id.* at 260.

[9] Whether Plaintiff has invoked federal question jurisdiction is relevant because there is some ambiguity as to whether the probate exception applies to federal question cases. *See United States v. Tyler*, No. 10-1239, 2012 WL 848239, at *4 (E.D. Pa. Mar. 13, 2012).  The Third Circuit refers to the doctrine as "an exception to federal courts' *diversity* jurisdiction." *See Three Keys Ltd. v. SR Utility Holding Co.*, 540 F.3d 220, 222, 225-26 (3d Cir. 2008) (emphasis added).

[10] 12 C.F.R. § 9 is also authorized by 12 U.S.C. § 24 (Seventh), 12 U.S.C. § 93a, and 15 U.S.C. § 78q, 78q-1, and 78w.  *See* 12 C.F.R. § 9.1(a).  I see no basis upon which these statutory provisions would confer a private cause of action.

[11] Courts "may take judicial notice of an adjudicative fact if that fact is not subject to reasonable dispute.  A judicially noticed fact must either be generally known within the jurisdiction of the trial court, or be capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001).  Several circuits have held that, for purposes of subject matter jurisdiction, a national bank is only a citizen of the state listed in its articles of association as its main office. *See OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 216 (2d Cir. 2016) (per curiam); *Rouse v. Wachovia*

exercise of jurisdiction because the judgment Plaintiff seeks would require this Court to assume control over property under the active supervision of the Surrogate's Court.

Under the probate exception, federal courts lack jurisdiction over "the probate or annulment of a will and the administration of a decedent's estate" and may not "dispose of property that is in the custody of a state probate court." *Marshall v. Marshall*, 547 U.S. 293, 311-12 (2006).[12]  Distilling *Marshall*, the Third Circuit has explained that the probate exception precludes federal courts from "endeavoring to (1) probate or annul a will, (2) administer a decedent's estate, or (3) assume *in rem* jurisdiction over property that is in the custody of the probate court." *Three Keys Ltd. v. SR Utility Holding Co.*, 540 F.3d 220, 227 (3d Cir. 2008).  The third prong applies where the "relief sought would necessitate exercising control of assets actively under the control of the state court." *Bretter v. Peyton*, No. 22-2509, 2022 WL 4454332, at *4 (E.D. Pa. Sept. 23, 2022) (McHugh, J.); *Three Keys*, 540 F.3d at 229.  Critically, the Third Circuit has endorsed a "practical approach to determining whether claims implicate[] *in personam* or *in rem*

---

*Mortgage, FSB*, 747 F.3d 707, 708 (9th Cir. 2014); *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 709 (8th Cir. 2011).  Bank of America's main office is located in North Carolina.  While the Third Circuit has not considered this issue, no matter what test I apply, Bank of America is not a citizen of Pennsylvania.  The complete diversity requirement is therefore satisfied.

[12] In *Marshall*, the Supreme Court observed that the probate exception is not compelled by the text of the Constitution or by federal statute, but instead is a judicially created doctrine that stems "in large measure from misty understandings of English legal history."  *Marshall v. Marshall*, 547 U.S. 293, 299 (2006).  Judge Posner has characterized the doctrine as "one of the most mysterious and esoteric branches of the law of federal jurisdiction."  *Dragan v. Miller*, 679 F.2d 712, 713 (7th Cir. 1982).  Before *Marshall*, most federal courts, including the Third Circuit, interpreted the probate exception more broadly.  *Marshall* criticized and superseded an earlier Third Circuit case, *Golden ex rel. Golden v. Golden*, 382 F.3d 348 (3d Cir. 2004), which had interpreted the probate exception as a jurisdictional bar to claims "interfering" with the process of probate.

Defendant is correct, however, that courts have applied the probate exception to trusts. *See Woitovich v. Schoenfeld*, No. 22-1742, 2022 WL 17979571, at *2 (S.D.N.Y. Dec. 28, 2022) ("[B]oth the Supreme Court and the Second Circuit have applied the probate exception to trusts.  *Marshall* itself – the Supreme Court's leading modern case on the probate exception – involved a trust.").

jurisdiction and cautioned against making this determination based only upon the 'surface' of the claims alleged." *Bretter*, 2022 WL 4454332, at *4 (citing *Three Keys*, 540 F.3d at 229-30); *Deckard v. Emory*, No. 17-5182, 2020 WL 3960421, at *11 (E.D. Pa. July 13, 2020) (concluding that plaintiff's breach of fiduciary duty claims implicated the probate exception even though the claims "appear[ed] on the surface to seek the kind of *in personam* relief that is outside of the probate exception's reach.").

### *1.  The trusts are in the custody of the Surrogate's Court.*

As a threshold matter, I conclude that the trusts at issue are within the custody of the Surrogate's Court.  The New York Constitution vests the state's surrogate's courts with "jurisdiction over all actions and proceedings relating to the affairs of decedents, probate of wills, [and] administration of estates" and authorizes the courts to "exercise such equity jurisdiction as may be provided by law."  N.Y. Const., art VI, §§ 12(d) & (e).  Moreover, the Surrogate's Court Procedure Act ("SCPA") provides that the surrogate's courts shall "exercise full and complete general jurisdiction in law and in equity to administer justice in all matters relating to estates and the affairs of decedents."  *See* SCPA § 201(3); *see also id.* § 209 (enumerating the powers incidental to the jurisdiction of the court).  The SCPA applies to both testamentary and inter-vivos trusts.  *See* SCPA §§ 1501-1509; *id.* §§ 205, 207.

Pursuant to the jurisdiction conferred upon it by the New York Constitution and by statute, the Surrogate's Court of Westchester County has supervised the trusts at issue here for nearly six decades.  In 1967, the Surrogate's Court admitted Vida Pell's Will to probate and issued Letters of Trusteeship to the trustees named in the Will.  ECF 10-4.  Five years later, the court issued Successor Letters of Trusteeship to Angie Pell with respect to the testamentary trust.  ECF 10-6.  The following year, the court judicially settled and approved the trustees' first intermediate

account for the testamentary trust.  ECF 10-7.  In the early 2000s, the court judicially settled and approved the trustees' second intermediate account for both trusts, and approved the settlement of a dispute regarding a beneficiary's rights under both trusts.  ECF 10-8.  In 2025, the court approved Bank of America's resignation as trustee of both trusts, appointed First State Trust Company as successor trustee, and appointed Plaintiff as successor trustee of the testamentary trust.  ECF 10-11; ECF 10-13.  On June 5, 2025, Bank of America petitioned the court for the judicial settlement of the bank's intermediate accounts.  These proceedings remain pending.  ECF 13-1; ECF 13-2.

The Surrogate's Court of Westchester County has exercised supervisory control over the trusts for nearly sixty years – and continues to do so.  In my view, this level of sustained activity is sufficient to place the trusts within the custody of the state probate court.

> 2.  *Plaintiff's claim for trustee commissions due to Bank of America's purported failure to timely appoint him as successor trustee is barred by the probate exception.*

Plaintiff's claim for unpaid trustee commissions falls squarely within the probate exception, as any potential judgment would require this Court to assume *in rem* jurisdiction over trust property under the active supervision of the Surrogate's Court.  Notably, under the SCPA, trustee fees are paid from trust assets, which, as discussed above, are presently in the custody of the Surrogate's Court.[13]  *See* SCPA § 2309.  Accordingly, if Plaintiff prevails on his claim for unpaid commissions, this Court would be obligated to assume *in rem* jurisdiction over the same *res* that is currently under the jurisdiction of the state court, an outcome explicitly barred by the probate exception.  *Marshall*, 547 U.S. at 311; *Three Keys*, 540 F.3d at 229.

---

[13] The testamentary trust likewise provides that trustee commissions are payable from trust assets in accordance with New York law.  *See* Compl. Ex. A at Article Seventh.

8

Case 2:25-cv-01901-GAM    Document 15    Filed 08/05/25    Page 9 of 10

3.  *Plaintiff's claim for excessive legal fees is precluded by the probate exception because of the parallel accounting proceedings pending in the Surrogate's Court.*

On the surface, Plaintiff's claim for excessive legal fees would not appear to require this Court to "assume *in rem* jurisdiction over property that is in the custody of the probate court." *Three Keys*, 540 F.3d at 227.  Unlike Plaintiff's claim for unpaid trustee commissions, where any monetary relief would come directly *out* of the trust, here, a judgment would be *reimbursed* to the trust.  In other words, "the judgment sought would just add assets to the [trust]; it would not reallocate the [trust's] assets among contending claimants."  *Gustafson v. zumBrunnen*, 546 F.3d 398, 400 (7th Cir. 2008).

Critically, however, the Surrogate's Court is currently overseeing accounting proceedings concerning, among other things, the reasonableness of counsel fees incurred by Bank of America in its role as corporate trustee – a process that affords Plaintiff the opportunity to be heard.  On June 5, 2025, Bank of America commenced these proceedings pursuant to SCPA § 2208, seeking "approv[al] [of] payments to McGuireWoods LLP for legal services rendered . . . together with such additional legal fees and disbursements as may be incurred through the conclusion of the instant proceeding."[14]  ECF 10-14 at ¶ 29(e); ECF 10-15 at ¶ 29(f).  Now, pursuant to SCPA § 2211(1), the Surrogate's Court will (1) take the account submitted by the fiduciary; (2) hear the proofs of the interested parties; and (3) settle the account as justice requires.  As part of this process, Plaintiff has the right to file an objection to Bank of America's payments of legal fees and other

---

[14] Bank of America seeks the approval of approximately $106,000 in counsel fees in connection with the testamentary trust and approximately $71,000 in fees in connection with the inter-vivos trust.  ECF 10-14 at ¶ 29(e); ECF 10-15 at ¶ 29(f).  These figures do not include additional fees that may be incurred as part of the pending accounting proceedings.  In his Response, Plaintiff asserts that these proceedings have "been completed" such that "there is no proceeding now pending in the New York Surrogate's Court."  ECF 12 at 4-5.  But that is not the case.  In its Reply, Bank of America attached the relevant filings, demonstrating that the proceedings are active and only recently underway.  ECF 13-1; ECF 13-2.

9

administrative expenses.  Moreover, even in the absence of objections, the Surrogate's Court may inquire into the propriety of a fiduciary's accounting *sua sponte*.  *See Stortecky v. Mazzone*, 85 N.Y.2d 518, 526 (1995) (holding that the Surrogate's Court "had the authority to inquire into the reasonableness of counsel's fee even though agreed upon by the executor and assented to by the beneficiaries.").

Bank of America's payments to McGuireWoods are central to both the present action and to the accounting proceedings pending in the Surrogate's Court.  Any relief granted by this Court on this issue would thus necessarily interfere with the Surrogate's Court's rulings on the same issue, with the result that the probate exception precludes federal jurisdiction.[15]  *Marshall*, 547 U.S. at 311-12; *see also Mercer v. Bank of N.Y. Mellon, N.A.*, 609 F.App'x 677, 679 (2d Cir. 2015) (citing *Princess Lida of Thurn & Taxis v. Thompson*, 305 U.S. 456, 467 (1939)) ("claims against trustees by a trust's beneficiaries for 'administration and restoration of corpus' cannot be maintained if another court is already exercising control over the trust.").[16]

## IV.    Conclusion

For the reasons set forth above, Defendant's Motion to Dismiss will be granted.  An appropriate order follows.

>   /s/ Gerald Austin McHugh
>   United States District Judge

---

[15] For this reason, even if the probate exception were not applicable to Plaintiff's claim for excessive legal fees, there is a strong argument, given the parallel nature of the state court proceedings, that abstention would be warranted under the *Colorado River* doctrine, even under the Third Circuit's stringent formulation of the test.  *See Spring City Corp. v. Am. Bldgs. Co.*, 193 F.3d 165, 171-72 (3d Cir. 1999).

[16] Plaintiff's miscellaneous claims – that Bank of America improperly threatened trustee beneficiaries to execute an indemnification agreement and unwisely invested in bonds, *see* n.7, *supra* – are likewise bound up in the accounting proceedings.